Yes, Your Honor. May it please the Court, this case is about a November 28, 2023 public meeting of the St. John the Baptist Parish Council, and we are seeking a reversal of a trial order in denial of a motion for a new trial. Happy to answer questions, but I'll talk first, if none, at the outset about what happened that night. This was a public meeting at which one of the agenda items was a proposal by the parish president, Defendant Jacqueline Hotard, to use public funds to pay for a private ethics lawyer. The only ethics issue facing the parish at that time was a complaint filed by Plaintiff Dr. Joy Banner, who is here with us today. She had uncovered the fact that the parish president's family was directly benefiting, financially, from the parish president's rezoning actions. And so Dr. Banner went there that night to talk during public common periods to bring up her ethics complaint and express her opinion that public money should not be spent on the private defense of the parish president's ethics issues. The defendants, Parish President Hotard and Council Chair Michael Wright, had anticipated that Dr. Banner might say something like that, and they came up with a plan in advance to silence her. We know this in part from President Hotard's text messages obtained through Discovery, where she texted, quote, she would not let Dr. Banner, quote, say I violated the ethics code. And Defendant Wright actually pre-printed out a sheet of paper with a statute on it to read during the meeting. And so when Dr. Banner started to speak, defendants immediately silenced her. In defendants appellate brief, they acknowledged this was within five seconds of the beginning of Dr. Banner's public comment. Defendant Hotard interrupted Dr. Banner to say that Dr. Banner's comments were, quote, a violation of state law, and asked the chair to, quote, stop this comment. Defendant Wright obliged. He gaveled Dr. Banner silent, and then he read to her from the statute on the piece of paper he was holding, which threatened Dr. Banner with imprisonment for up to a year if she talked about her ethics complaint. Given that threat of prosecution, Dr. Banner ended her comment prematurely after some back and forth and sat down, and several other people who intended to speak did not speak that night because of the threat of criminal prosecution. After the meeting, Dr. Banner found out that the law that Defendant Wright had read to her from the piece of paper had been declared unconstitutional nine years earlier by the Eastern District of Louisiana, because there was a state statute saying you can't talk about your own ethics complaint, and the Eastern District found that law to be unconstitutional. And then it turned out, through a public records request, Dr. Banner got the piece of paper that Defendant Wright was reading from, and it said unconstitutional at the top. And all this was presented to the jury. Oh, yes. And they came back with a verdict adverse to your client. Yes. You filed the new trial motion that had two grounds. One was that there was no evidence for the jury's verdict against you, and the second one was there was just too much prejudice through opposing counsel's trial activity, correct? Correct. I would say an overwhelming evidence in favor of the plaintiff. I won't say there was no evidence for defendants, but... So which do you want to start with? You're saying Judge Brown erred when she denied your new trial motion on both grounds. Correct. Which do you want to begin with? I'll begin with the misconduct of defense counsel. And I think these two things interact, right? Because I think the overwhelming evidence in favor of plaintiff made it more surprising the jury's verdict, which can partly potentially be explained through the defense counsel misconduct. So the defense counsel misconduct, we detail in our brief 39 different examples of misconduct by defense counsel. And these are not all the objections at trial. We didn't include things that we don't think are prejudicial. You know, run-of-the-mill leading objections or relevance objections. These are the things that seem prejudicial to the course of the trial. For example... We know the acts of misconduct, and you're right, they were largely upheld. Sort of a legal difficulty with this argument is the district court didn't just rely on the juror's statement to deny this. The district court said, I think I did enough curatively. And so the 38 or 39 acts of misdeeds that you described, lo and behold, almost every time you objected, she did sustain the objection or tell the jury. So the question then becomes, do you have to move for mistrial? Or did you leave the impression with the district judge that you thought, in fact, you had cured it? Yeah. So there were some curative instructions sprinkled throughout. Not in response to every time this came up. Of the 39, I forget how many curative instructions there were. It was a small handful. But the idea that if the plaintiff doesn't seek a mistrial, then there's somehow a higher burden for them, was rejected by this court in Clapper two The court recognized, quote, the defendants also argue that a new trial is not warranted, or specifically about the request for a mistrial. Defendants made the argument that you've got to make a request for a mistrial, or else there's a higher burden on a motion for a new trial. The Fifth Circuit rejected that. And notably, defendants cite no case at all for the idea that the failure to request a mistrial somehow raises the standard for a motion for a new trial. And the trial court did point out that there were certain curative instructions, but the only thing that she cited for the proposition that it did not affect the outcome was only one thing, which was a quote from a juror in a newspaper talking about the deliberations of the other jurors. That's the only thing the trial court cited for the idea, which is the court question, of did this affect the outcome, or can we say with fair assurance that it did not affect the outcome, which is the standard that both parties. Well, I'm not disagreeing in full, but in part, because I'm looking at the district court's order. The court acknowledges defense counsel repeatedly caused the violence of poverty and obscenity. The record reflects plaintiff's objections were sustained where appropriate jury was instructed. Plaintiff has not shown the misconduct was not cured. Moreover, even assuming it was improper, it didn't materially affect. So as to the first ground, this one of pervasive, cumulative, aggregate prejudice, it does look like the district court said independently, I cured it. So therefore, we would have to say she abused her discretion in giving curative instructions, and yet the counsel didn't say, Your Honor, I want more. I want a voir dire. I want a sanctioned counsel. Is that fair to say? Almost, Your Honor. She did not affirmatively find that her instruction cured the error. What she said is that plaintiff has not shown that misconduct was not cured. In fact, contemporaneously at trial, you can see this in the record, she expressed misgivings that her instructions had cured. And I think that the cumulative nature of the misconduct is relevant here because when you have more instructions, the more instructions you have to disregard or disregard that, it becomes harder and harder for the jury to track what they're supposed to take into consideration, what they're not. So when you have one disregard that, that's easy for a jury to remember. But when you have multiple different overlapping instructions about disregarding various things, it becomes much harder to track. And the trial court contemporaneously expressed concern that it wasn't doing the job. But if the only thing that the court pointed to, as you pointed out, saying, assuming that defense counsel's conduct was improper, which the trial court found that it was, the court finds that any such misconduct did not affect the outcome of the trial, and then cites only the one thing. Last question on this, because I want you to have time to get to the evidentiary issue. But on this, out of the 39, which to you is the most egregious that you can't unring the bell, no curative instruction could have protected that? Do you have one that you think really prejudiced the jury? Yes, Your Honor. I think that the repeated efforts of defense counsel to tell the jury what the law was, that what Dr. Banner was talking about was confidential. Defense counsel said, it is the law. He said that it was confidential repeatedly. The trial court instructed him not to say that because it was stipulated that this law had been found unconstitutional nine years prior. But defense counsel kept coming back to it. And in fact, I counted last night, if you look at the closing argument of defense counsel, which is in the record at pages 2488 to 2498, defense counsel refers to confidential 16 times, repeatedly arguing to the jury that it is right to keep certain things confidential, that certain things like medical records need to be kept confidential. But of course... But there were no objections during the closing. That's true, Your Honor. But Clapper also says that objections during closing are not necessary when it affects the outcome. And in fact, Clapper talks about how violations in closing are particularly damaging, quote, particularly damaging, because the last thing the jury hears is the closing argument. And so, you know, the court had already instructed defense counsel not to do this. It's your legal position that independent of the prejudice issue, there's reversible error in the new trial denial because the district court didn't assess any evidence when it considered your motion on that separate ground. Do you understand my question? No, I don't. Okay. So when you filed the new trial motion, you said attorney prejudice colored the whole trial. You've got to give us a new trial. Second, you said there's no evidence to support this verdict. And then she said, well, actually, I've looked at the juror comment to the media, and we know what the jury heard. We know that they thought that she's fearless, and she kept talking anyway. That's right. And so the court considered that. The court should not have because Federal Rule of Evidence 606 categorically bars a court from, quote, receiving that kind of evidence. Notably, defense counsel in their appellate brief makes no justification, does not even respond to that argument at all. But the court, you're right, did use that as the basis to explain why the trial court thought there wasn't. Okay. So that was my question. That's an independent, separate, reversible error. Yes. If the district court relied on 606 material that it couldn't, and there's been no argument by opposing counsel that the 606 material was valid. Yes, that's right. And I think that there are really four reasons that I think counsel for reversal of the denial of new trial. One is the cumulative nature of the prejudicial defense counsel misconduct. The second is the trial court's reliance on the prohibited 606 material for which defense counsel provides no explanation or legal defense. The third, if you do choose to that juror's statement, which I don't think you should, but if you do, it shows that the jury was applying the wrong legal standard because they looked at the actual impacts to one person, whereas the legal standard is whether a person of reasonable firmness would be, had their speech chilled. Is the only thing that's questionable is the juror testimony to a news agency to determine a new trial? Yes. I think if you looked at that alone, Your Honor, it would be sufficient to remand, to at least order a new trial or remand to the trial court because the rule of evidence is categorical that that should not be received. 606. Yes, rule 606, Your Honor. So I think if you only looked at that issue, that would be sufficient to grant the relief that plaintiff is requesting. I agree. In the brief, there's no legal authority justifying it, except there's the intimation that you invited the error. Do you remember that? I don't, Your Honor. In the brief, we'll hear from opposing counsel, but he intimates that by seeking to speak to jurors, you recall this? Yes, of course. I mean, we sought leave to interview the jurors. In the Eastern District of Louisiana, there's a local rule saying you have to request permission of court to interview jurors. You can't go talk to them. We requested that leave. The court denied it, which was quite significant. The defense counsel objected to us interviewing the jurors, and then defense counsel said that the most important thing in denying the motion for a new trial is what a juror said. You can't have it both ways. I think it also emphasizes the unfairness that the trial court presented, which is relying on the statement of a juror in the news about what other jurors said, so we're talking multiple levels of hearsay, but then not letting us talk to them. But to answer the question, no, I don't think requesting leave to talk to jurors somehow invites the other side to cite their news reports. That is the brief argument. Yes, but there's no legal basis for that. I think the other really concerning issue, you asked me what's the worst of the misconduct. The other thing that really bothered both us and the court was the deliberate premeditated effort to violate a motion in limine about advice of counsel. So there had been, at deposition, the defendants repeatedly said, on advice of counsel, I did this. On advice of counsel, I did that. We did a motion in limine pointing out that, number one, they hadn't raised that as an affirmative defense. Number two, this would not meet the test for advice of counsel, even if they had. The court excluded that, excluded that advice of counsel or any intimation of it. And yet, defense counsel solicited it from a plaintiff anyway. And that's when the court said something about, it's out there. There was a reference to an email and communications with counsel. Once that's out there, it's out there. This is, I think, analogous to Holy Book cottonseed, which is cited by both sides, in which a single violation of a motion in limine, just one, during one witness's testimony, was sufficient to grant a new trial. That's 772 F3rd 1031 from 2014 from this court. And here, that's just one example on the long litany. So this is, Holy Book cottonseed says, you got one motion in limine violation. That can, when it's prejudicial, call for a new trial. Here, we've got the 39 examples. And notably, defense counsel does not try and explain why any of these examples were okay. They just restate them in their brief. But I think it is a question of, you know, these things fit together. There was overwhelming evidence at trial in favor of the plaintiff. Prejudicial defense misconduct put them together. I think that the standard for a new trial is more than exceeded. Thank you. All right. Thank you, Mr. Most. You've saved time for rebuttal. Mr. Spears? May it please the Court. Good morning. My name is Ike Spears, and together with Co-Counsel Joyce Sala, we represent Parish President Jacqueline Holtard, Councilman Michael Wright, and St. John the Baptist Parish. First of all, I want to thank you for granting oral argument in this particular case. But more importantly, I want to especially thank you for scheduling oral argument at my law school alma mater. So I'm very pleased to be here with you this morning, and I appreciate what you do to to the law student body. There was a three-day trial. Testimony, argument, evidence was presented. A nine-person jury rendered a unanimous verdict in favor of all three defendants, that is Holtard, Wright, and the parish, on each of Ms. Vanner's claims. You just thanked us for having oral argument, but your brief said that oral argument was not necessary here, was not needed. Well, I didn't know you were coming to Tulane at the time. If you had told me in advance that we would be at Tulane, I would have welcomed the opportunity. On the brief, it's only five pages of analysis, legal analysis. There's no section as to standard of review. It would be abusive. That is what you're saying now, you accept that it's an abuse of discretion? Yes. Okay, that's a mandatory section in Rule 28? Yes. Because I thought in your brief, on the second issue, you were saying that they had waived or forfeited or invited, and therefore, as to the second issue, maybe instead there was plain error review or no review at all. But you're agreeing, you didn't put a standard of review section in, but you're telling us now we should review the denial of the new trial order for abuse of discretion? Abuse of discretion. Okay. And let me walk through... No, no, no, no. I'm going to ask you a few questions, because when the brief is only five pages long, it leaves me with a lot of questions. Okay. Okay. How do you get around the section, I mean, Rule 606, which bars a new trial based on juror testimony to a news agency? Judge, I'm glad you asked that. First and foremost, under the facts of this case, the facts of this case, what's presented, 606 does not apply. The plain reading of 606 talks about juror testimony in an effort to get a new trial. What we have here, Judge, and unfortunately, we live in an era... But where did you make that argument in your brief? I don't think it was in the brief. Okay, so what's the argument that you in the brief as to 606 being a justifiable basis for the district court to deny the new trial motion? What argument did you make in the brief? Our point was this, Judge, we think that if you remove the juror's statement, and I was going to get into detail about the juror's statement, if you remove the juror's statement, the judge still has sufficient evidence... Okay, where did you say that between pages 20 and 22 to us? I don't think we said that point. Okay, so that isn't your argument to us. It may be one you're coming up with an oral argument. Where did this district court, because the district court's order is the one we're reviewing. Correct. Where did it say that? Well, if you read the reasons and argument, I'm sorry, the reasons and judge, the judge indicated that a new trial was not in order for three particular reasons. Number one, she said that defense counsel's alleged misconduct... No, I know. I'm not asking about the misconduct. I'm asking about the second ground, about evidence to support the verdict. What did Judge Brown say was the basis? Did she point to any evidence in the record to support the verdict? Yes or no? What she said, yes. What she said was, and this is an important point, Judge. Well, I'm asking you two specific questions. In your brief, do you point to any record evidence to support the verdict? And in the district court's order, did it point to any record evidence? And I'll give you a hint. The only sentence the district court gave to this issue is on the last page, first full sentence. Based on Cam Owen's statements, the court concludes the jury's verdict was reasonably supported the evidence. So unless you correct me, the district court had one and only one reason for upholding the verdict, and that was, quote, based on Cam Owen's statement. We do not agree with that, Judge. Well, read me something else the district court said, not on the prejudice issue, as to where the district court pointed to any evidence. I think it's important to note, Judge, that Judge Brown has lived with this case since its inception. We've had a multitude of motions, including motions for summary judgment. And if you look at her reasons in the motion for summary judgment, what she specifically says is that a reasonable jury could conclude in favor. Okay, but so what you're saying is you're defending the new trial denial based on a prior to trial ruling. That's what you did in your brief. The only evidence you cite is the summary judgment ruling before the trial. How is that a justification for denying a new trial motion looking at the trial evidence? Judge, there was a multitude of evidence supporting. I know you're saying that, but I guess I'm asking you one more time. You cited no evidence in the brief. We did not specifically cite it in the brief. Is that the judge? Okay, and the district court didn't cite any either. No, but the judge did illustratively make reference to the CAM juror statement. Okay, so let's focus on that. Is it permissible, did you cite any case law saying it is permissible for a district judge to cite as its only basis for denying a new trial motion what a juror said to the media happened in deliberations? Did you cite a case in your brief? I did not cite a case that said a post-trial statement to the media was impermissible to be considered, but this is the point that I was attempting to make, Judge. We live in an era today that's filled with the internet, social media, social influences, and so some of these jurors become celebrities on their own after major trials. They give interviews to Dateline, to Nightline, to 60 Minutes, and they talk about what happened. That and that alone is not a sufficient reason for a judge to reverse a verdict because some juror or some jury gave a post-trial interview. I agree with that, but it's not, but what you have to argue here is she can refer to this celebrity guy's comments as the only reason for denying the new trial order, and I'm asking you didn't give us a case to support that, so please give me a case. I did not have a case, Judge. Do you have a case now? I do not have a case, but my point is it is not the only reason. She lived through this trial for three days. We had extensive, extensive jury instructions reviewed on day two. We worked well into the night, so if in fact there was an issue with jury instructions, if in fact plaintiff's counsel didn't feel that the instructions were sufficiently curated, that was the time, but we all after two or three hours with the judge late into the evening agreed that the judge's instructions were sufficient, but on the jury interview, Judge, my point is we can take that out. I don't think it is the only reason. We're saying that because that's what plaintiff is arguing. It is not the only reason. What we have... But you've heard me. It is the only reason given by the judge in the order that we are reviewing, and you've said yes. It is one of the reasons, but the judge also indicates that there was extensive evidence that the jury's verdict was reasonably supported by the evidence. That is in the judge's order. Okay, what page? I'll tell you the exact page if you give me a second, Judge. It's in the conclusion, but I'll tell you the exact page. No, the court says in the conclusion based on Cam Owens' statement the verdict was reasonably supported by the evidence. Right, but again, the court... Cam Owens said she's a pretty fearless woman. She was going to speak no matter what. That's true. And therefore, that's been your argument, and the jury accepted that? That was not my argument, Judge. My argument was this. If you look at the three issues presented to the jury, the easiest one to resolve was whether or not the parish officials violated the open meetings law. We're talking about the First Amendment case. Okay. On the First Amendment, the jury could reasonably conclude that there was no chilling effect. How could they conclude that? Listen to the testimony of Ms. Banner. She said that post the November 28th meeting, she came to multiple additional meetings, and she spoke at multiple additional meetings. Okay, now without... I understood that to be your argument. That is what Cam Owens said, but that's flatly inconsistent with First Amendment law. That's why it would help if you put any law in your brief. Let me read for you a decision, Judge Jones's decision, Keenan, 2002. It would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in the protected activity. So the test is not whether Ms. Banner is a very fearless woman and kept talking. That's the opposite of the test. So if Cam Owens said that, and you just said it that's the opposite of what the First Amendment allows. I'm not arguing that she's fearless and not fearless. What I'm saying is she was allowed... She was not chilled. The test is not whether this particular plaintiff was chilled. The test is whether a reasonable person would have been chilled when someone looks at them and says, here's a law that's going to put you in jail if you keep talking. And here's the evidence that supports our position, Judge. Number one, she spoke for over five minutes and she said everything she intended to say. I specifically asked her, was there anything that you came to the meeting to say that you did not get to say? And she said, I wanted to give out a pamphlet and I wanted to show my poster. But we've all seen the videos in the evidence here. Yes. She still has a minute to go when she has read aloud the law and she's begging for to have her minute left. That's on the video. She's saying, I want my minute after she's just been told and read aloud a statute that is centered as unconstitutional. According to the timer, she spoke for over five minutes. Additionally, after she spoke, other citizens, at least three, got up and spoke on the very same issue. Many of them criticized the parish, the parish council, and the parish president. So there was no chilling effect that would have stopped a reasonably ordinary person from speaking out. Now, one of the points that counsel makes is that there were people who wanted to speak but didn't. That is not what the video shows. The video shows that people who were there to speak did, in fact, speak. And he presented no evidence, no testimony from anyone who said, I came to the meeting, but after the parish chairman read the statute, I chose not to speak because of fear of arrest. No one was arrested. No one was removed from this meeting. Although, according to her own testimony, Ms. Banner was, in fact, removed from subsequent meetings that she came to speak at and disrupt. So my point is this, Judge. We have to consider the totality of the evidence presented as to whether a reasonable person, under those circumstances, would have thought that they were not allowed to speak on the agenda item. But your brief gives us none of the totality. You cited no trial evidence. You're asking us to look at the totality, but you cited none. And the district court cited none. I think the district court is led with this case. Okay. You said that. Let's turn to the prejudice arguments. There were 38, 39 particular aspects of alleged prejudicial behavior by you. Judge, first and foremost, most of those would be considered within the bounds of legitimate obviously and very minor. But let's look at, he pointed to one. Let me point to one. Well, no. Why don't you address the one he did? Because in opening argument, you twice say that this revised statute was the law, and then you use is the law. What was the justification for you to say that a law that Marty Feldman had struck down nine years older, what was your justification to tell the jury it is still the law? The justification is this, Judge. There was multiple witnesses who testified that the Board of Ethics, notwithstanding the Marty Feldman ruling, which is a single district court ruling, the only ruling that I'm aware of that addressed that issue and ruled a portion of the statute unconstitutional in part. Notwithstanding the Marty Feldman ruling, the Louisiana legislature has never taken the law off the books. Even today, that law is still on the books. Secondly, if in fact there is... So your argument, I mean, the First Amendment retaliation alleged here is that a council member said, you can be put in jail reading a law that on the piece of paper says it's unconstitutional and remarkably actually was found unconstitutional. Then you as council can get up in the same case and tell the jury it's actually still the law in spite of a federal district court ruling. And now in front of a federal circuit court, you are saying again that that law is constitutional. Is that your position? That's not my position. My position is the judge gave three paragraphs of detailed instructions on the stipulation and the unconstitutionality of the law. And in concluding, she said that federal courts do not strike down laws when ruling them unconstitutional. Instead, the courts hold them unenforceable. I mean, I'm sorry, instead the courts hold the laws unenforceable. And she concludes many laws that are plainly unconstitutional remain on the books. This law remains on the books. It was declared unconstitutional in part in a fact pattern that is so very different from this. Has any Louisiana citizen ever been in prison based on this law after 2014? Yes or no? Not to my knowledge, no. Has any Louisiana citizen ever been in prison based on this law even before it was declared unconstitutional? Not that I'm aware of. But what I am aware of, Judge, is that every time the Board of Ethics institutes an investigation, they stamp this law. And this has been introduced in jail. They stamp this law on the documents. They list it confidential, and they cite this particular statute, even though Judge Marty Feldman, you're correct, said that this statute is unconstitutional in part. That's why we stipulate it, because it's a fact that the district court judge did, in fact, under the facts of that case where people were, in fact, arrested and prosecuted, declared it unconstitutional. That was the Caldwell v. King case. Other than that, those facts don't parallel our facts. And if you take a moment to once again review what Chairman Wright says is, for everyone, including members of the council, I am reading this statute. He said for everyone, including members of the council. Did he read the stamp that said it's unconstitutional? No. His testimony, which the jury was entitled to accept or reject, his testimony was that he had received it earlier that day, and he had not noticed the stamp of unconstitution. That was in his deposition testimony. I've asked you a lot of questions. You were going to answer something, but I forced you not to. You were going to get to a point early. Do you recall what it was? Judge, I really don't, but I appreciate your questions, because I want to make sure that you understand our position. If you look at the four... You were going to point to some other alleged misconduct, and say it actually wasn't. Yes, yes, yes, yes, yes. He gives you 39, Judge. Many of them are a reach, are a stretch. But if you look at number 38, number 38 is an exchange, an exchange between me and Judge Brown, wherein I say, Judge, you know me, and you know I'm not that smart. And the judge says, and by the way, I made that reference, because she and I attended law school together. And when I say that, Judge says, no, you're very smart, and you're on top of it. I don't know how that exchange between me and the judge, where I'm making a sort of Columbo-style, self-deprecating remark about me not being very smart, and the judge correcting me by saying, yes, you are smart, you're very bright, and you're on top of it. How does that somehow persuade the jury? But that's one of his. And that one wasn't even objected to, was it? No. Many of them were not objected to, but he's using that as a basis to say that somehow the jury was tainted. Judge, when there was an issue that the court deemed to be inappropriate, argument, testimony, the judge immediately gave a curative instruction. No one asked for additional instructions, either during the course of the or during our late night back and forth over the final jury instructions. Is your position legally they have to move for mistrial in order to be able to move for a new trial? Or do you accept that they could, you just think she dealt with it, and she said in the new trial order, I did deal with it? I think if they had moved for a mistrial, they would have preserved the issue. They did not move for a mistrial, because they thought they were winning. And at the end of the day, he says that the overwhelming evidence would have supported a verdict for the plaintiff. But the truth is, the jurors heard all of the evidence. And it's their job to sift through the evidence, to give credibility to the witnesses they think are credible. And they can disregard the witnesses they think are not credible. They answered three important questions. They answered a question on They answered a question on the retaliation. They answered a question on the open meetings. They're all in favor. This is not a mixed verdict, where they ruled in favor of some defendants, but against them and others. This is a solid win. Before your time's up, I'd like you to come back to Judge Wiener's question. Is there any authority supporting a district court to deny a new trial motion with reference to a juror's public statements about what happened in the jury room? Yes or no? Judge, I'm aware of no authority. However, I do not believe that the denial was solely based on a news article. And what I do believe is the judge heard all of the testimony and all of the evidence. And as she said, and I know it was pretrial, the juror could have concluded either way. The juror ruled in favor, rightfully so, in favor of the defendants. But what you have in this news article, it's illustrative. The judge makes reference to it, but it is not in evidence. It is not the gospel. She is aware of it because it's out there. And quite frankly, there was an effort by plaintiff's counsel to interview the jurors. And the reason they wanted to interview the jurors is to see if they could glean from the interviews some level of misconduct that they could then turn around and present to the judge and say, judge, we have to have a new trial because during the interview with the jurors, they said something or did something that's unacceptable and inappropriate. So they want to have it both ways. They want to interview the jurors. Then when one juror voluntarily gives a statement, not elicited by myself, the court, or Mr. Most, they say, well, you can't consider that. But if you do consider it, they didn't apply the right standard. That's just flat out wrong, Your Honor. All right. Thank you, Mr. Spears. Mr. Most, you've saved time for a vote. Yes, Your Honor. I'll go through a couple of things in Mr. Spears' statement that I think are flatly wrong. First, we don't interview jurors to try and glean information for a new trial. That's prohibited by Rule 606. We do it to get better the next time. We try and improve as we go. Second— Every good lawyer does that, right? I hope so. You try to ask the jurors, what did we do wrong? What could we have done better? Yes. Second, Mr. Spears suggested that the mistrial is, quote, necessary to preserve an issue. That's flatly wrong. He sets no authority for that proposition. It was rejected in Clapper in 2024 by this Court. Third, I think possibly the worst, he directly misrepresents what 606 says. He suggests that it only applies to juror testimony. That is not what it says. The last sentence of 606B1 says the Court may not receive a juror's affidavit or evidence of a juror's statement on these matters. It is not limited to testimony. Evidence of a statement, like a press statement, is explicitly included in 606. Third, Mr. Spears pointed a couple times, urging this Court to rely on the trial court's denial of summary judgment as somehow informing this. That's not apposite because at the summary judgment phase, the Court has to read the facts in the light most favorable to the non-moving party. That's not true in a motion for a new trial. You can look to Smith v. Transworld Drilling Company. That's 773F2nd 610 at Pinside 613. The Fifth Circuit said you do not, need not, look at the light, the facts in the light most favorable to the non-moving party at this stage. So it's apples and oranges. Fourth, the idea that Dr. Banner spoke for five minutes. I mean, just watch the video. She didn't. It was five minutes between when she started speaking and when she left the stand. But that's because the defendants were spending much of that time talking themselves. She did not speak for five minutes. Second, he suggested that there was no evidence that people chose not to speak after they heard the threat. That's inaccurate. If you look at ROA 2189, one of the witnesses, quote, I leaned over and I told my husband that I don't think we should speak. That's in context. It's based on the threat. Mr. Spears suggested that he did not try and make an argument at trial that Dr. Banner was able to say what she wanted to say. In fact, that was one of the main themes of his defense of the case. And in fact, it's what the trial court found made a mockery of the proceedings. When Mr. Spears pulled out a stopwatch and demanded that Dr. Banner say what she was going to say so that he could, I guess, show that she said most of what she wanted to say. So that was core to his defense of the case. And then the idea that, you know, many of these 39 examples of misconduct weren't objected to by plaintiff's counsel. That's true for a lot of them. For at least 13 of them, it was because the court's sua sponte had to step in. And so the court perhaps beat plaintiff's counsel to the punch. I don't think that that is a problem. And then Caldwell v. King, the Judge Feldman decision, was about Terry King, who was faced with sanctions for talking about the content of his own ethics complaint. It's the same thing. It's the same issue. And that's what Judge Feldman found to be constitutional about this statute, is that you cannot, under the First Amendment, stop people from talking about their ethics complaints, because that's part of the right to petition government. That's freedom of speech. That's what Dr. Banner did. That's what she was threatened with arrest for. And that's why we think we need a new trial. Thank you. Thank you, Mr. Most. This case and all of today's cases are under submission.